# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENDRYS SANCHEZ,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | Case No. 1:26-cv-07007-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF No. 1) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who entered the United States on February 2, 2001 as a parolee. Petitioner adjusted to lawful permanent resident status on February 26, 2003. (ECF No. 1 at 2; ECF No. 10-1 at 70.[1]) On April 24, 2023, an immigration judge ordered Petitioner removed to Cuba. (ECF No. 10-1 at 67.) Petitioner and the government waived appeal. (Id. at 68.) U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner after the removal order and released him on an order of supervision ("OSUP") in or about May 2023. (ECF No. 1 at 3.)

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

On February 12, 2024, Petitioner was convicted of burglary of an unoccupied conveyance and was sentenced to an imprisonment term of two years, ten months, and twenty-six days. ICE took Petitioner into custody upon his release from state custody on April 28, 2026. (ECF No. 10-1 at 70, 79.) Petitioner is currently detained at the California City Immigration Processing Center. (ECF No. 1 at 2.)

Between May 6 and September 11, 2026, Enforcement and Removal Operations ("ERO") attempted on nine occasions to obtain Petitioner's signature on paperwork concerning third country removal to Mexico and Petitioner refused. (ECF No. 10-1 at 72–77, 79.) On or about September 16, 2026, petitioner was approved for third country removal to Liberia. (Id. at 79.)

On September 2, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On September 24, 2026, Respondents filed a response to the petition. (ECF No. 10.) On October 14, 2026, the Court appointed counsel for Petitioner. (ECF No. 13.) On October 28, 2026, Respondents filed a supplemental opposition, and Petitioner filed a reply on November 11, 2026. (ECF Nos. 16, 17.)

## II.

## DISCUSSION

### A. Detention Under 8 U.S.C. § 1231

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and

during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

**B. Applicability of 8 U.S.C. § 1231(a)(1)(C)**

"[T]he removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal." Johnson v. Guzman Chavez, 594 U.S. 523, 528

(2021) (citing 8 U.S.C. § 1231(a)(1)(C)). Respondents argue that the removal period is extended under 8 U.S.C. § 1231(a)(1)(C) because Petitioner refuses to cooperate with removal efforts to Mexico. (ECF No. 10 at 3–4.) "[T]his District routinely rejects such argument regarding 'failure to cooperate' with removal to a third country because there is no obligation for such cooperation." S.R. v. Warden of the California City Corr. Ctr., No. 1:26-CV-03587-TLN-CSK, 2026 WL 2676077, at *3 (E.D. Cal. Sept. 11, 2026) (collecting cases). See Obando Vargas v. Blanche, No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("[P]etitioner has no removal order to Mexico. Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes respondents' counsel to avoid wasting the court's time and resources with such arguments in the future."); Dopico Pereira v. Warden of the California City Immigr. Processing Ctr., No. 1:26-CV-05007-NW, 2026 WL 2552737, at *2 (E.D. Cal. Aug. 30, 2026) (Argument "that Petitioner's refusal to consent to removal to Mexico has the effect of extending his removal period" "has been widely rejected throughout this circuit, and the Court does the same here."). Based on the foregoing, the Court recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable.

**C. Notice and Informal Interview**

"[T]he burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3).

> Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:
>
>> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.
>
> *Id.* § 241.13(i)(3).

Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025).

Here, in Ground Four, the petition asserts that Respondents re-detained Petitioner without notification of the reasons for revocation of his release and/or an initial informal interview promptly after his return to custody. (ECF No. 1 at 17.) Despite being provided the opportunity to address this issue in supplemental briefing, Respondents do not respond to this allegation whatsoever. There is nothing in the record that Petitioner received notice of the reasons for the revocation of his release. Additionally, "[b]ecause there is no indication that an informal interview was provided to Petitioner, the court finds . . . that his re-detainment was unlawful." Hoac, 2025 WL 1993771, at *4.

**D. Likelihood of Removal**

"A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a

significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. 2026) (alteration in original) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at 1160–61. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 813 F. Supp. 3d at 1164 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

Respondents argue that "ICE remains ready, willing, and able to effectuate petitioner's removal to Mexico as soon as petitioner cooperates." (ECF No. 16 at 2.) "As this Court and other judges in this District have pointed out, though DHS may have an informal arrangement with the Mexican government to allow third country removals to Mexico, Mexico only accepts individuals who consent to be removed there." Pedro V.L. v. Warden, No. 1:26-CV-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (emphasis in original). Therefore, "removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-CV-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026). Here, Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 10-1 at 72–77, 79.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future.

> The record is devoid of any evidence suggesting Mexico will accept Petitioner in the absence of his consent, and Petitioner's repeated refusal to cooperate with his removal to Mexico evidences his non-consent. Therefore, even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner's burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.

Pedro V.L., 2026 WL 2607611, at *1. Accordingly, the Court recommends finding that

Petitioner is entitled to habeas relief on Ground Four and immediate release.[2] See B.D. v. U.S. Att'y Gen., No. 1:26-CV-05510-KES-EGC (HC), 2026 WL 2546626, at *1 (E.D. Cal. Aug. 28, 2026) (noting that "numerous district courts have held that when a petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may [not] be detained indefinitely" and ordering immediate release of petitioner where it "has been more than a year since petitioner was taken back into ICE custody, eight months since ICE tried to remove petitioner to Cuba, and seven months since ICE identified Mexico as a third country for petitioner's removal" (internal quotation marks and citation omitted)).

**E. Third Country Removal**

In Grounds Two and Three, Petitioner asserts that Respondents' third country removal procedures violate due process, 8 U.S.C. § 1231, the Convention Against Torture, the Administrative Procedure Act ("APA"), and the Fifth and Eighth Amendments. (ECF No. 1 at 14–16.)

1. Ripeness

In the supplemental opposition, Respondents contend that the "only identified option for third country removal remains Mexico," and "[b]ecause third country removal in this case will not proceed unless petitioner acquiesces, this case is not ripe for presentation of a direct Fifth Amendment or statutory challenge to the third country removal process." (ECF No. 16 at 1, 2.) However, in contradiction to the supplemental opposition's assertions, Respondents have submitted the sworn declaration of Deportation Officer Travis Mears that states "ERO has explored other countries for possible third country removal. On or about September 16, 2026, petitioner was approved for third country removal to Liberia with a potential departure flight as early as September 27, 2026." (ECF No. 10-1 at 79.) The supplemental opposition does not mention Liberia whatsoever. Yet, as "Respondents have not disavowed removal to Liberia or any other [third] country," (ECF No. 17 at 16), and there is nothing in the record before this Court that the September 16, 2026 approval for Petitioner's third country removal to Liberia has been rescinded, the Court recommends finding that Petitioner's third country removal claims are ripe.

[2] In light of this conclusion, the Court declines to address Ground One.

2. Due Process

"It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "a basic tenet of constitutional due process" is "that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence," Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

Multiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent. See, e.g., Kumar v. Wamsley, 817 F. Supp. 3d 1059, 1070 (W.D. Wash. 2025) (noting "overwhelming authority against" the policy); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent. . . . Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions."); Nguyen, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." (citations omitted)). In light of Andriasian, the Court recommends finding that Respondents' third country removal policy violates due process and is contrary to Ninth Circuit precedent. Accordingly, Petitioner should not be removed to Liberia or a third country without meaningful notice and an opportunity to assert a fear-based claim.[3]

[3] In light of this conclusion, the Court declines to address Ground Three.

In A.A.M. v. Andrews, 815 F. Supp. 3d 1124 (E.D. Cal. 2025), the district court stated:

> Several decisions from the Western District of Washington, however, have more thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in relation to his removal to a third country "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which seeks discretionary relief that may be denied without any sort of hearing—is not an adequate substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on his claim that removal to a third country under [the DHS Third Country Removal Policy], without meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due process." *Id.* at 19 (emphasis added).
>
> Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025) determined "on the merits of petitioner's argument that due process does not allow respondents to 'remove or seek to remove him to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.' " The court in *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling ...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL 2987766, at *4 (granting motion for temporary restraining order enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to respond in compliance with statute and due process in reopened removal proceedings").
>
> This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 815 F. Supp. 3d at 1140–41.

The Court finds the reasoning of A.A.M. and the decisions from the Western District of Washington persuasive. Accordingly, the Court recommends enjoining Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a

fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Grounds Two and Four;
2. Petitioner be immediately released under appropriate conditions of supervision;
3. Respondents be enjoined from re-detaining Petitioner pursuant to 8 C.F.R. § 241.13(i)(2) unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future; and
4. Respondents be enjoined and restrained from removing Petitioner to Liberia or another third country unless Respondents adhere to the following procedures:
    a. provide Petitioner and his counsel written notice of the proposed country in a language Petitioner understands;
    b. provide Petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;
    c. if Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 25, 2026**

STANLEY A. BOONE
United States Magistrate Judge